IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUANA V. SOSA DE MASS | : | CIVIL ACTION |
|     Plaintiff | : | |
|     v. | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of the | : | |
| Social Security Administration, | : | |
|     Defendant | : | NO. 10-3998 |

REPORT AND RECOMMENDATION

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                              September 23, 2011

        Juana V. Sosa De Mass ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act. Plaintiff has filed a brief in support of her request for review, the Commissioner has responded to it and Plaintiff has filed a reply brief. For the reasons set forth below, it is recommended that Plaintiff's request for review be GRANTED in part and DENIED in part, Judgment be entered in favor of Plaintiff and against Defendant and the case be REMANDED to the Commissioner for further proceedings consistent with this report and recommendation.

I. PROCEDURAL HISTORY[1]

        On March 28, 2007, Plaintiff applied for DIB and SSI alleging disability, since February 1, 2005, as a result of bilateral carpal tunnel syndrome, rheumatoid arthritis, hypertension and depression. (R. 15, 165). Benefits were denied, initially, whereupon, Plaintiff requested and was

---

[1] The court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of Request for Review, Defendant's Response to Request for Review of Plaintiff, Plaintiff's Reply Brief to Defendant's Response to Request for Review, and the administrative record ("R."), inclusive of all exhibits thereto.

granted an administrative hearing. On July 15, 2009, Plaintiff appeared before Reana K. Sweeney, Administrative Law Judge ("ALJ"), for an administrative hearing; Plaintiff and Paul Anderson, a vocational expert ("VE"), testified at the hearing. (R. 22-55). On July 30, 2009, the ALJ, using the sequential evaluation process for disability,[2] issued an unfavorable decision. (R. 13-19). On June 10, 2010, the Appeals Council denied Plaintiff's request for review, making the ALJ's findings the final determination of the Commissioner. (R. 1-5). This case was referred to the undersigned by the Honorable Norma L. Shapiro, under the authority of 28 U.S.C. § 636(b)(1)(B), for preparation of a report and recommendation.

## II. FACTUAL BACKGROUND

A.  Personal History

Plaintiff, born on September 21, 1952, was 56 years old at the time of the administrative hearing.[3] (R. 26). She completed the eighth grade in the Dominican Republic, is illiterate in English

---

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not an adult claimant is disabled:

> 1. If claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. If claimant is found not to have a severe impairment which significantly limits his or her physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. §§ 404.1520 (c), 416.920(c).
>
> 3. If claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4. If claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).
>
> 5. The Commissioner will determine whether, given claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, he is or is not disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

[3] Once a person attains age 55, she is considered "a person of advanced age." 20 C.F.R. §§ 404.1563(e), 416.963(e).

and has past relevant work as a poultry processor, hand packager and housekeeper.[4] (R. 31, 33-35, 48, 51, 225). Plaintiff is married, but separated, and lives with her thirty-four year old daughter and two minor grandchildren. (R. 27, 30).

B.    Plaintiff's Testimony

At the July 15, 2009 administrative hearing, Plaintiff testified, *via* an interpreter, about her physical and mental limitations. (R. 26-45). She has pain in her hands, feet and knees and her depression and anxiety affect her sleep. (R. 38, 43). Plaintiff wears a brace on her left foot and ankle, (R. 44), yet, she can only stand for fifteen to twenty minutes at a time because of knee and foot pain. (R. 45). Although Plaintiff underwent carpal tunnel surgery for her left wrist on November 3, 2005, (R. 40), her symptoms have persisted and she has received post-surgical treatment, including injections. *Id.* Plaintiff cannot lift more than ten to fifteen pounds. (R. 44). Plaintiff speaks little English; her past co-workers and supervisors spoke both English and Spanish. (R. 31).

On a typical day, Plaintiff arises at 8:00 a.m., reads her Bible, makes coffee and speaks to her grandchildren. (R. 40). She performs no household chores, because she cannot stand long enough without pain. (R. 41). Plaintiff's daughter maintains the household without Plaintiff's assistance. *Id.*

C.    Vocational Testimony

Referring to his report, Exhibit 10-E, (R. 224-26), the VE testified about Plaintiff's past work as follows. Her cleaner, housekeeping job was light work,[5] providing no transferrable skills; (R. 49, 224), her hand packager job was medium work,[6] providing no transferrable skills; (R. 49, 225), and

---

[4] Plaintiff emigrated to the United States in 1995. (R. 31).

[5] "Light work involves lifting no more that 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[6] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

her job as a poultry-dressing worker was heavy work,[7] providing no transferrable skills. (R. 49, 226). The VE was asked to consider a hypothetical person who is: limited to light work; limited to occasional, bilateral use of hand and arm levers or cranks; unable to climb ropes, ladders, scaffolding or poles; unable to repetitively handle or finger on either side; unable to hold her hands in a fixed position for more than 30 minutes; unable to work with vibrating objects with both upper extremities; able to push or turn simple buttons or knobs; limited to unskilled work; able to perform a job which allows her to communicate in English or Spanish; and unable to read or write English. (R. 49-50). The VE initially responded that such an individual could not perform any of Plaintiff's past relevant work. (R. 50). However, upon further questioning from the ALJ, the VE stated that Plaintiff could perform her past cleaner job as it is customarily performed in the national economy, but not as Plaintiff actually performed it.[8] (R. 51). The VE identified several other jobs that the hypothetical person could perform.[9] (R. 52-54). Plaintiff's attorney declined to pose any questions to the VE. (R. 54).

### III. THE ALJ's FINDINGS

In her decision, the ALJ issued the following relevant findings:

3. [Plaintiff] has the following severe impairments: bilateral carpal tunnel syndrome, seropositive rheumatoid arthritis and depression (20 CFR 404.1520(c) and 416.920(c)).

5. After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she should avoid climbing

---

[7] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. §§ 404.1567(d), 416.967(d).

[8] Under the regulations, it is appropriate to consider whether a claimant can perform her past work either as she actually performed it, or as it is "generally performed in the national economy." 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2).

[9] The ALJ did not rely upon this testimony, hence, it is unnecessary to list the alternative work the VE identified. *See Fargnoli v. Massanari*, 247 F.3d 34, 44 n.7 (3d Cir. 2001) (explaining that the court is limited to considering the evidence and explanations that the ALJ actually cites to support her conclusions).

>    rope, ladders and scaffolding. In addition, [Plaintiff] can occasionally operate bilateral hand/arm levers and cranks, should avoid repetitive handling and fingering bilaterally as well as working with vibrating objects or surfaces with the upper extremities, and requires unskilled work tasks that involve no reading or writing in the English language.
>
> 6. [Plaintiff] is capable of performing past relevant work as a hotel housekeeper. This work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity (20 CFR 404.1565 and 416.965).
>
> 7. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from February 1, 2005 through the date of this decision (20 CFR 404.1520(f) 416.920(f).

(R. 15, 16, 18, 19).

## IV.    DISCUSSION

A.    Standard of Judicial Review

Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed if they are supported by substantial evidence. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted). It is more than a mere scintilla of evidence but may be less than a preponderance. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ and the court should grant deference if the ALJ's findings of fact are supported by substantial evidence even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). On the other hand, the

Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.      <u>Burden of Proof in Disability Proceedings</u>

In order to be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. Under the second method, Plaintiff must initially demonstrate that a medically determinable disability prevents her from returning to past employment. *See Brown v. Bowen*, 845 F.2d at 1214. If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff is capable of performing given her age, education, and work experience. *See Poulos,* 474 F.3d at 92; *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

C.      <u>Review of the Administrative Law Judge's Decision</u>

Applying the sequential evaluation process, the ALJ determined that Plaintiff could perform

her past relevant work as a housekeeper and, therefore, denied her application for DIB and SSI benefits. (R. 13-19). Plaintiff maintains that the ALJ: (1) failed to consider all of the medical evidence in the record or to provide an adequate reason for rejecting certain medical evidence; (2) failed to give great weight to Plaintiff's complaints of pain; (3) failed to give great weight to the disability opinion of treating physician, Marie S. O'Brien, D.O.; and (4) erred in finding that Plaintiff could perform her past relevant work as a housekeeper. *Plaintiff's Brief and Statement of Issues in Support of Request for Review* ("Pl.'s Br.") at 6-14. The Commissioner requests that the court affirm the ALJ's finding that Plaintiff is not disabled. *Defendant's Response to Request for Review of Plaintiff* ("Def.'s Br.") at 3-12. The court will address Plaintiff's third argument first, then the others in turn.

1. <u>The ALJ Properly Considered Dr. O'Brien's Disability Opinion</u>

Plaintiff maintains that the ALJ failed to afford great weight to Dr. O'Brien's opinion that she was disabled. Pl.'s Br. at 12-13. However, no physician's opinion, even that of a treating physician, stating that a claimant is disabled, constitutes a medical opinion entitled to deference. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). Hence, the ALJ was free to ignore Dr. O'Brien's conclusion that Plaintiff was disabled. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203 n.2 (3d Cir. 2008). Accordingly, this claim lacks merit.

2. <u>The ALJ's Failure to Consider Certain Medical Evidence is not Reversible Error</u>

Plaintiff maintains that the ALJ failed to properly analyze the medical evidence in the record, because she failed to explain why certain evidence was rejected.[10] Pl.'s Br. at 6-10. First, Plaintiff

---

[10] Plaintiff also alleges that the ALJ erred in stating that Dr. O'Brien's July 30, 2008 report (found within Exhibit 14F, (R. 451-70)) contains certain findings. Pl.'s Br. at 8. However, Plaintiff is factually incorrect, because the challenged findings – Plaintiff was in no acute distress, showed no signs of clubbing, cyanosis or edema, had no tender or swollen joints, had full range of motion of large and small joints with no spinous process tenderness – are, indeed, contained in Dr. O'Brien's letter dated July 30, 2008. (R. 468).

complains that the ALJ omitted certain of Dr. O'Brien's findings in Exhibit 13F. Pl.'s Br. at 8. Next, she alleges that the ALJ ignored the following evidence: (1) Maxwell Stepanuck, Jr., D.O.'s opinion that Plaintiff required right-side carpal tunnel surgery but lacked insurance; (2) Chris Boylan, D.C.'s findings that Plaintiff had bilateral hand pain, numbness and tingling when trying to grasp or use her hands; (3) Dr. Boylan's April 2006 finding that Plaintiff's left side symptoms had worsened after she tried to use her hands for cooking and lifting a half-gallon of milk; and (4) Dr. O'Brien's observations of Plaintiff's neck, bilateral leg and left shoulder pain, and her findings that Plaintiff's rheumatoid arthritis was at times worsening and better. Pl.'s Br. at 8-9. Finally, Plaintiff maintains that the ALJ's recitation of the medical evidence misleadingly suggests that she no longer had left-side carpal tunnel syndrome symptoms after October 20, 2006 despite Dr. Boylan's contrary findings. *Id.* at 9. Plaintiff's claims concerning Dr. O'Brien will be addressed first, then the others.

      *a.*     Dr. O'Brien

Plaintiff initially complains that the ALJ failed to consider properly four findings contained in Dr. O'Brien's July 11, 2008 letter: (a) Plaintiff's knees were warm and tender bilaterally, (b) she had small ankle effusions with excessive warmth and reduced range of motion, (c) her wrists and metacarpophalangeal joints were tender bilaterally, and (d) her neck was tender with reduced flexion and extension. Pl.'s Br. at 8 (citing R. 449). First, the ALJ expressly mentioned the fact that Plaintiff had ankle effusions. (R. 18). Second, Plaintiff did not testify about any limitations caused by her neck. *See* R. 26-45. Hence, failure to address this condition specifically is, at worst, harmless error. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (explaining that there is no need to remand for the ALJ to explicit consider a medical condition which the claimant did not identify as one causing disability). Third, although the ALJ failed to mention that Plaintiff's knees

were warm and tender, she did note Dr. O'Brien's finding of synovitis, (R. 18), the underlying condition causing these symptoms.[11] *See The Merck Manual*, at 334 (19th ed. 2011).  Hence, the failure to mention warmth in Plaintiff's knees would be, at worst, a harmless error.  *See Rutherford*, 399 F.3d at 553.  Finally, although the ALJ failed to mention Dr. O'Brien's objective findings that Plaintiff's wrists and metacarpophalangeal joints were tender bilaterally, the significance of this omission is unclear, since the ALJ imposed bilateral upper extremity limitations. (R. 16).  This court finds that the ALJ's omission constitutes a harmless error.  *See Rutherford*, 399 F.3d at 553.

Plaintiff also complains that the ALJ ignored Dr. O'Brien's observations in January, March and May 2009 of Plaintiff's neck, bilateral leg and left shoulder pain and her opinion that Plaintiff's rheumatoid arthritis symptoms alternated between worsening and improving.  Pl's Br. at 9 (citing R. 459-64).  These records are equivocal.  First, the left shoulder pain and bilateral ankle problems were mentioned only during Plaintiff's January 2009 visit, (R. 459-60); since these conditions were not documented in the last two visits, they may very well have resolved themselves.  Further, although Dr. O'Brien concluded that Plaintiff's rheumatoid arthritis and left shoulder pain were worse in January 2009, (R. 460), by May 2009, there was no mention of any left shoulder problem and her rheumatoid arthritis symptoms had improved.  (R. 464).  Likewise, Plaintiff's neck pain, first mentioned in March 2009, (R. 461), had improved by May 2009.[12]  (R. 463).  In sum, these records do not support the conclusion that Plaintiff is disabled or that the ALJ erroneously assessed her residual functional capacity.  Therefore, the ALJ was not required to provide a reason for rejecting them.  *See Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994).  Furthermore, Plaintiff's medical

---

[11] Synovitis is also called tenosynovitis, *The Merck Manual*, at 3729 (19th ed. 2011), which is tendinitis with inflamation of the tendon sheath lining.  *Id.* at 374.

[12] In addition, Plaintiff did not testify about any limitations caused by her neck.  *See* R. 26-45.  Hence, any omission of this condition is, at worst, a harmless error.  *See Rutherford*, 399 F.3d at 553 (explaining that there is no need to remand for the ALJ to explicit consider a medical condition which the claimant did not identify as one causing disability).

records are voluminous, such that the ALJ did not err by failing to explicitly mention these specific records. *See Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).

### b. Dr. Stepanuck

Plaintiff complains that the ALJ omitted Dr. Stepanuck's opinion that Plaintiff required right-side carpal tunnel syndrome surgery, which she lacked insurance to obtain. Pl.'s Br. at 8 (citing R. 296). This assertion is misleading and lacks merit. The ALJ noted that Dr. Stepanuck characterized Plaintiff's right-sided carpal tunnel symptoms as, "without medical insurance and . . . therefore unable to receive ongoing treatment." (R. 17). This accurately reflects Dr. Stepanuck's opinions concerning Plaintiff's right-side carpal tunnel syndrome, need for surgery and lack of insurance. *See* R. 296. Further, the ALJ specifically found that Plaintiff suffers from bilateral carpal tunnel syndrome. (R. 15).

### c. Dr. Boylan

Plaintiff further complains that the ALJ ignored Dr. Boylan's findings – in his October 5, 2006 to June 19, 2007 treatment notes – that she had bilateral hand pain, and numbness and tingling when trying to grasp or use her hands. Pl.'s Br. at 8 (citing R. 290-95). This is inaccurate; the ALJ's decision does mention Dr. Boylan's treatment notes generally and concludes that Plaintiff's symptoms decreased after Dr. Boylan's treatment. (R. 17). If the treatment notes Plaintiff cites herein supported disability or residual functional capacity conclusions contrary to those reached by the ALJ, remand for the ALJ to explicitly provide some reason for rejecting these treatment notes would be required. *See Adorno*, 40 F.3d at 48. However, those notes are equivocal. Although treatment notes do indicate bilateral hand pain with numbness and tingling, on three, separate occasions (October 28, 2006, November 2, 2006 and December 14, 2006), Plaintiff stated that her

symptoms had improved and Dr. Boylan noted that the objective findings were better. (R. 291, 294). Further, the ALJ found that Plaintiff suffers from bilateral carpal tunnel syndrome, (R. 15), which is the condition Dr. Boylan was treating. Hence, it is not clear that the cited treatment notes support the conclusion that Plaintiff is disabled or should have a different residual functional capacity that the one assessed by the ALJ.[13] Since it is not clear that Dr. Boylan's treatment notes from October 5, 2006 to June 19, 2007 support a contrary conclusion to those reached by the ALJ, she was not required to provide explicit reasons for rejecting them. *See Adorno*, 40 F.3d at 48. Moreover, when a plaintiff has voluminous medical records, the ALJ is not required to cite every treatment note in the record. *See Fargnoli v. Massanari*, 247 F.3d at 42. Accordingly, this assertion of error lacks merit.

Next, Plaintiff complains that the ALJ ignored Dr. Boylan's April 2006 findings that her left-side symptoms worsened after she tried to use it more while cooking and trying to lift a half-gallon of milk. Pl.'s Br. at 9 (citing R. 329-30). This complaint lacks merit, because Plaintiff misstates the facts of record. On April 6, 2006, Plaintiff reported that she could not lift a heavy pot while cooking. (R. 329). However, she also reported that her left hand symptoms had improved and Dr. Boylan noted that her objective findings were improved. *Id.* Then, on April 27, 2006, Plaintiff reported pain while lifting a half-gallon of milk. (R. 330). Notably, she further reported that her symptoms had not significantly changed; Dr. Boylan confirmed that her objective findings were unchanged. *Id.*

Finally, Plaintiff maintains that the ALJ's recitation of the medical evidence erroneously suggests that she no longer had left-side carpal tunnel syndrome symptoms after October 20, 2006 despite Dr. Boylan's contrary findings. Pl.'s Br. at 9. This assertion is misleading, inasmuch as the

---

[13] The ALJ assessed that Plaintiff could occasionally operate bilateral hand/arm levers and cranks, but could not repetitively handle and finger or encounter vibrating objects or surfaces with either upper extremity. (R. 16). It is not clear that Dr. Boylan's notes require more severe restrictions than these and Plaintiff does not explain why they might.

ALJ found that Plaintiff suffers from bilateral carpal tunnel syndrome. (R. 15). Hence, the ALJ did not need to mention explicitly the following: on October 28, 2006, Plaintiff reported to Dr. Boylan that she had bilateral hand pain and numbness, (R. 291); Plaintiff continued to report these symptoms to Dr. Boylan, until June 19, 2007, when Dr. Boylan noted that Plaintiff had a positive Tinel's sign on both sides. (R. 291-95). This result strongly suggests bilateral carpal tunnel syndrome. *The Merck Manual*, at 391. Thus, the omitted evidence is cumulative and merely affirms the ALJ's conclusion that Plaintiff has bilateral carpal tunnel syndrome.

       3.      <u>The ALJ Improperly Evaluated Plaintiff's Subjective Complaints of Pain</u>

Plaintiff maintains that the ALJ failed to afford her subjective complaints of pain great weight. Pl.'s Br. at 10-12. She alleges that the ALJ's decision to rely upon a consultative examiner to refute her pain testimony was flawed because: (1) the ALJ should have relied upon Plaintiff's treating physicians instead, and (2) the consultative examiner was not aware that Plaintiff suffered from rheumatoid arthritis. *Id.* at 11-12.

In this circuit, if a claimant has a condition which can cause pain, her subjective complaints of pain are entitled to great weight and may not be rejected by an ALJ, unless the ALJ cites contrary medical evidence. *Mason*, 994 F.2d at 1067-68. Plaintiff's first assertion of error is not successful *per se* because it is permissible to prefer a non-treating physician's assessment and opinions to those of a treating physician. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). However, if the non-treating source's opinions are themselves flawed (for example, for lacking awareness of all the claimant's medical conditions), they should not be relied upon to reject the findings of a treating physician. *See* 20 C.F.R. §§ 404.1527(d)(6), 416.927(d)(6) (explaining that the extent to which a medical source is familiar with the information in the claimant's case record is relevant to

determining the proper weight to afford that source).

The ALJ found that Plaintiff has bilateral carpal tunnel syndrome and rheumatoid arthritis. (R. 15). Both conditions can cause pain. *The Merck Manual*, at 391 (carpal tunnel syndrome), 332 (rheumatoid arthritis). Hence, the ALJ was required to afford Plaintiff's complaints of pain great weight and could only reject her pain testimony with contrary medical evidence. *Mason*, 994 F.2d at 1067-68. The ALJ did not explicitly cite any medical evidence to justify rejecting Plaintiff's pain testimony. *See* R. 17-18. Plaintiff suggests that the ALJ may have relied upon the August 30, 2007 consultative examination of Gregory Singer, M.D., as support for rejecting her pain testimony, however, that report would not justify doing so. Dr. Singer finds that Plaintiff has carpal tunnel syndrome and imposes restrictions upon her based, in part, on that diagnosis, while making no mention of her rheumatoid arthritis. (R. 398). This is significant because rheumatoid arthritis causes joint pain, stiffness, fatigue, malaise, and generalized weakness. *The Merck Manual*, at 332. Dr. Singer could not have assessed Plaintiff's rheumatoid arthritis, because Plaintiff had not yet been diagnosed with it.[14] *See* R. 516 (Dr. O'Brien's July 11, 2008 letter stating that Plaintiff's test results from March 28, 2008 indicate rheumatoid arthritis). Hence, Dr. Singer's report is not substantial, contrary medical evidence sufficient to reject Plaintiff's pain testimony. *See Mason*, 994 F.2d at 1067-68. This case should be remanded so that the ALJ properly assesses Plaintiff's credibility concerning her subjective complaints of pain in light of her rheumatoid arthritis.

    4.    <u>The ALJ Erred in Finding that Plaintiff Could Perform her Past Housekeeper Job</u>

Plaintiff contends that the ALJ erred in concluding that she could perform her past relevant work as a housekeeper. Pl's Br. at 13-14. Plaintiff argues that her housekeeper job requires use of vibrating objects (vacuum cleaners and floor waxing machines), an activity specifically precluded

---

[14] Rheumatoid arthritis is diagnosed *via* clinical criteria, blood tests and X-rays. *The Merck Manual* at 333.

by the ALJ's assessment of her RFC. *Id.*

The VE did not explicitly address whether Plaintiff's past job required vacuuming or using floor waxing machines; he reported that the position generally involved *no vibration*. (R. 224). Yet, Plaintiff has brought to the court's attention evidence that her past job, as performed in the national economy,[15] does require use of vacuum cleaners and floor waxing machines, which vibrate when used. *See* Pl.'s Br. at 13-14; www.occupationalinfo.org/onenet.67002.html (accessed on Aug. 11, 2011). Upon remand, the VE shall clarify whether Plaintiff's past housekeeper job requires use of vacuum cleaners and/or floor waxing machines. Further, the VE shall consider if use of such machines contravenes the ALJ's restrictions from hand vibrations.

## V.   CONCLUSION

After a thorough review of the record, this court finds that the Commissioner's final decision is flawed by reversible error, to wit, a lack of substantial evidence. Accordingly, Plaintiff's request for review should be granted in part and denied in part. I make the following:

---

[15] The VE testified that Plaintiff could not perform her actual past housekeeper job but could perform it as it is customarily performed in the national economy. (R. 51).

## RECOMMENDATION

**AND NOW**, this 23rd day of September, 2011, I respectfully recommend that:

1. The Report and Recommendation be **APPROVED** and **ADOPTED**;

2. The Plaintiff's Request for Review be **GRANTED** in part and **DENIED** in part;

3. The case be remanded to the Commissioner so that the ALJ can: (a) properly assess Plaintiff's subjective complaints of pain; (b) reassess whether Plaintiff can perform her past work as a housekeeper; if not, (c) determine whether other work exists in the national economy which Plaintiff can perform; and

4. Judgment be **ENTERED** in favor of Plaintiff and against the Commissioner of the Social Security Administration.

It be so **ORDERED**.

                                                */s/ Carol Sandra Moore Wells*
                                                CAROL SANDRA MOORE WELLS
                                                United States Magistrate Judge